**Javier Lopez CALDERON, aka Mario Garcia Lobato, aka Adolfo Bonilla Mesia, aka Javier Calderon, aka Javier Calderon Rodriguez, Petitioner**

v.

**D.K. SISTO, Respondent.**

**Case No. SACV 08–0022–DSF (RC).**

United States District Court, C.D. California.

April 6, 2009.

Heather F. Crawford, CAAG—Office of the Attorney General of California, San Diego, CA, for Respondent.

Javier Lopez Calderon, Vacaville, CA, pro se.

### ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

DALE S. FISCHER, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recom-

mendation and Judgment by the United States mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Dale S. Fischer, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On January 19, 2005, in Orange County Superior Court case no. 83CF01254, a jury convicted petitioner Javier Lopez Calderon, aka Mario Garcia Lobato, aka Adolfo Bonilla Mesia, aka Javier Calderon, aka Javier Calderon Rodriguez, of one count of second degree murder in violation of California Penal Code ("P.C.") § 187(a) (count 1), and the jury found it to be true that petitioner personally used a firearm in the commission of the murder within the meaning of P.C. § 12022.5(a). Clerk's Transcript ("CT") 171–72, 261–63; Reporter's Transcript ("RT") 502–05. On March 25, 2005, petitioner was sentenced to the total term of 19 years to life in state prison. CT 299–300, 306–07; RT 530–31.

The petitioner appealed his conviction and sentence to the California Court of Appeal, CT 302–05, which in an unpublished opinion filed July 27, 2005, modified petitioner's sentence "by striking the two restitution fines and by reducing the four-year term for the gun-use enhancement under Penal Code Section 12022.5 to two years," and affirmed the judgment as modified. Lodgment nos. 3–6. On September 5, 2006, petitioner, proceeding through counsel, sought review in the California Supreme Court, which denied review on October 11, 2006. Lodgment no. 7; *People v. Calderon,* Cal. Supreme Court case no. S146298.[1]

### II

The California Court of Appeal, in affirming petitioner's judgment as modified, made the following factual findings:[2] In December 1983, Daniel Mejia was shot four times in the back while he lay sleeping in a trailer. The next day, Savadra Mata, Mejia's neighbor, was found in the hills surrounding the trailers carrying a bag with two guns, one of which was the type used in the shooting. Early the very next morning, petitioner was seen boarding a bus to Santa Ana, responding to another passenger that he was just leaving to go "somewhere, somewhere."

The autopsy revealed four gunshot wounds in the body. The trajectories of the bullets inflicting the wounds indicated that the person must have been approaching the sleeping Mejia as he fired. Ballistics tests were inconclusive as to whether the .38 caliber gun found in Mata's bag was the one used to kill Mejia.

In January 2003, petitioner was in custody at a federal prison, but was transported to Orange to be interrogated about the

---

**1.** Despite respondent's Notice of Lodging indicating the California Supreme Court's denial has been lodged as Lodgment no. 8, that document is missing from the record. Nevertheless, the parties agree, and the California Supreme Court's website confirms, the petition for review was denied on October An-

swer at 5; Petition at 2. *See* http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=439149&doc_no=S146298 (last visited January 14, 2009).

**2.** *See* Lodgment no. 6 at 2–4.

Mejia murder by two detectives, Jorge De Souza and Robert Miller, from the Orange Police Department. The conversation was recorded. However, the recording began mid-sentence with De Souza explaining that he would be interpreting for Miller, who would ask petitioner "a few little questions." [3] He also asked if petitioner knew why he was there, to which petitioner replied, "sí." De Souza told petitioner that the detectives would advise him of his rights under the law, after which petitioner could tell his side of the story.

De Souza read the *Miranda* [4] rights in Spanish to petitioner, who responded "sí" to each admonition. De Souza never expressly asked if petitioner *waived* those rights. However, after stating he understood each of his rights, petitioner uttered his consent to answer their questions by saying, "uh-huh," when De Souza said they would now start the questions. Based on this, the trial court found petitioner's affirmative responses to all questions to be an implied waiver. [5]

According to petitioner, he was playing pool at a bar when Mata approached him and asked for "a favor." Mata told petitioner he would "have problems" if he didn't come with him, so petitioner accompanied Mata to Mejia's trailer. Mata handed petitioner a gun and told him to shoot. After initially protesting the order, petitioner obeyed because he believed Mata had a gun aimed at him, despite neither seeing nor feeling a gun. He admitted that he saw someone lying in a bed. He then aimed toward the middle of that bed, and fired multiple times. He further stated he was the only shooter.

Petitioner and Mata fled the scene and hid out on a hill near a soccer field. Petitioner claims Mata forced him to stay in the hills with him for two or three days before he finally escaped. Petitioner stated to officers that he confessed because he always had the killing on his mind, and he wanted to "come clean" after having spent the intervening 20 years living in Mexico, Arizona, Connecticut and various places throughout California under a myriad of other names.

The defense called clinical psychologist Roberto Flores de Apodaca who tested petitioner and concluded petitioner was below average intelligence and education. On cross-examination, Apodaca agreed that there was no evidence or indication that petitioner had either mental illness or retardation, and his communication skills and understanding during the testing process were unfettered.

### III

On December 21, 2007, petitioner, proceeding pro se, filed the pending habeas corpus petition under 28 U.S.C. § 2254 in the United States District Court for the Southern District of California, which transferred the action to this district court on January 8, 2008. On June 3, 2008, respondent filed an answer, and petitioner filed a reply on September 11, 2008.

The petition raises the following two claims:

Ground One—A *Miranda* violation occurred "because (a) the police began a custodial interrogation without first advising [petitioner] of his *Miranda* rights, (b) when *Miranda* rights were belatedly given

---

3. Petitioner stated that he understood English but could not speak very well.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. After De Souza established that petitioner understood each of the rights explained to him, De Souza stated to his partner, "Okay. Uh … we got a waiver. He understood everything that we explained to him … now we are going to go into the questions."

they were inadequate as a matter of law, and (c) any so-called express or implied waiver was not voluntarily, knowingly, or intelligently made." (Petition at 9, Exh. A); and

· Ground Two—"The trial court denied [petitioner] his right to a full and fair *Miranda* hearing." *Id.*

## DISCUSSION

### IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court reached the merits of petitioner's claims when it denied his petition for review without comment or citation to authority. *Pinholster v. Ayers,* 525 F.3d 742, 756 n. 11 (9th Cir.2008); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied,* —— U.S. ——, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, in addressing petitioners' claims, this Court will consider the reasoned opinion of the California Court of Appeal, which denied the claims on their merits. *Butler v. Curry,* 528 F.3d 624, 640 (9th Cir.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 767, 172 L.Ed.2d 763 (2008); *Delgadillo v. Woodford,* 527 F.3d 919, 925 (9th Cir.2008).

### V

The Fifth Amendment privilege against self-incrimination provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." [6] In *Miranda,* the Supreme Court established a prophylactic procedural mechanism to safeguard a defendant's Fifth Amendment privilege against the inherently coercive effects of custodial interrogation. *Miranda,* 384 U.S. at 457–58, 86 S.Ct. at 1619. Thus, *Miranda* requires that before questioning a suspect in custody, law enforcement officials must inform the suspect that:

---

**6.** The privilege against self-incrimination applies to the states through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–94, 12 L.Ed.2d 653 (1964).

He has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 444, 478–79, 86 S.Ct. at 1612, 1630; *Dickerson v. United States,* 530 U.S. 428, 435, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405 (2000). No additional warnings are required under *Miranda. United States v. Lares–Valdez,* 939 F.2d 688, 689–90 (9th Cir.1991) (per curiam).

■■■ A defendant may waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612; *Colorado v. Spring,* 479 U.S. 564, 566, 572–73, 107 S.Ct. 851, 853, 856–57, 93 L.Ed.2d 954 (1987). Such waiver has two distinct aspects:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (citations omitted); *Spring,* 479 U.S. at 573, 107 S.Ct. at 857. The "totality of the circumstances" include " 'not only the crucial element of police coercion,' but also the length of the interrogation, its location, and its continuity[,]" and "may also include the failure of the police to advise the suspect of his rights, as well as any direct or implied promises of a benefit." *Clark v. Murphy,* 331 F.3d 1062, 1072 (9th Cir.) (citations omitted), *cert. denied,* 540 U.S. 968, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003).

In Ground One, petitioner claims his *Miranda* rights were violated when: (1) the police began his custodial interrogation without first advising him of his *Miranda* rights; (2) his *Miranda* rights were belatedly given and were inadequate as a matter of law; and (3) any so-called express or implied waiver by petitioner was not voluntarily, knowingly, or intelligently made. There is no merit to these claims.

The California Court of Appeal, in affirming petitioner's judgment as modified, denied petitioner's *Miranda* claims, stating:

[Petitioner's] first contention is that De Souza's dialogue with [him] prior to giving the *Miranda* warnings constituted an interrogation.[FN4] *Miranda* warnings must be given before a custodial interrogation begins. (*Miranda v. Arizona,* supra, 384 U.S. at p. 444 [86 S.Ct. at 1612].) An interrogation "refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301 [100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297].) However, not all discussions between police officers and suspects should be regarded as interrogations. Rather, "[t]he police may speak to a suspect in custody as long as the speech would not reasonably be construed as calling for an incriminating response." (*People v. Clark* (1993) 5 Cal.4th 950, 985 [22 Cal.Rptr.2d 689, 857 P.2d 1099].)

[FN4]. There is no dispute that petitioner was in custody.

To support his allegation that the discussion constituted an interrogation, [petitioner] emphasizes the tape recording commenced *after* the conversation was already underway. However, he does not allege that *questioning* occurred prior to the recording, nor is there any information to that effect. Nonetheless, [petitioner] complains that there is no evidence, *one way or the other*, to show that the conversation did *not* include interrogation. The transcript of the interview commences in mid-sentence with De Souza introducing his partner to [petitioner] and presenting himself as the translator. Then a page-and-a-half of transcription follows before the *Miranda* warning is given. We note the parties *stipulated* to the transcript as being "an accurate depiction [ ] of the conversation...." We therefore accept and review this transcribed conversation as the entire discussion to see if interrogation occurred. [¶] In the initial conversation, De Souza explained mundane things to [petitioner] such as De Souza's role as translator,[FN5] the fact that the detectives would be asking him some questions, and that he would need to speak up. Finally, De Souza asked him whether he understood why he was there. [Petitioner's] responses were limited to "sí," "uh huh," and "okay."

FN5. [Petitioner] complains on appeal that De Souza was neither neutral nor qualified as an interpreter, but was an active police officer conducting an interview and therefore should not have been used to interpret. The issue is irrelevant in reviewing the *Miranda* claim: De Souza was a certified interpreter and a member of the enforcement team.

[Petitioner] specifically takes issue with the following exchange: [¶] "De Souza: 'Okay. You know why you are here. Yes. Okay. Before we ask you some questions, I'm going to tell you the rights you have under the law.' [¶] [Petitioner]: 'Uh huh.' [¶] De Souza: 'So that ... you can ... understand your rights under the law. Then we are going to ask you some questions so we know your side of the story. Every story has two sides, right? Yes?' [¶] [Petitioner]: 'Uh huh.' [¶] De Souza: 'Yes? Say yes and ... so we can understand you correctly. Okay. Is that alright? Yes?' [¶] [Petitioner]: 'Yes.'" [Petitioner] describes this exchange as "clever softening-up of a defendant through 'ingratiating conversation'" which violated *Miranda* and its progeny. Yet, we can hardly construe answering "yes," to the old cliché, "there are two sides to every story," as an incriminating response, considering anyone would have answered it similarly. Moreover, we recognize that explaining the legal process to a limited speaker of English often requires more introductory dialogue to ensure the suspect understands what is happening. With those considerations in mind, the preparatory conversation with [petitioner] did not comprise an "interrogation," and his *Miranda* rights were not violated. [¶] Alternatively, [petitioner] argues that the detectives utilized this "softening up" process to undermine *Miranda* protections by giving the impression that it was in [petitioner's] best interest to share his "side of the story." ... [¶] ... [¶] In the case before us, there was no incriminating information revealed by [petitioner] prior to receiving the *Miranda* warning. Moreover, ..., petitioner never invoked his right to counsel, nor did the detectives ignore such an invocation. [¶] Furthermore, this case is not on par with the other cases on which petitioner relies.... As we stated before, [petitioner's] case does not involve an instance where he invoked his rights, and the officers bla-

tantly ignored it. [¶] Lastly, [petitioner's] situation is distinguishable from ... [one in which the defendant] was advised of his *Miranda* rights, [and] immediately after which the detective told him, " '[i]t might be best if you do this. The judge might let it go easier on you if you confess and tell the truth.' " ... [¶] [Here], De Souza did not expressly state nor did he imply that petitioner would receive a benefit (*i.e.* leniency) for waiving his *Miranda* rights and telling his "side of the story." Moreover, De Souza's pre-*Miranda* statements were a preview of what [petitioner] could expect, rather than a directive that [petitioner] *should* speak in spite of his right to remain silent. Finally, [petitioner's] admission that he wanted to speak to the police to clear his conscience reflected his confession was made freely, rather than as a result of trickery or cajoling. [¶] [Petitioner] argues that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. Once again, he urges that his *Miranda* warning was given to him after he was induced to tell his side of the story by the officer's softening techniques. He also argues his decision to talk was not self-motivated, and he did not expressly waive his *Miranda* rights. [¶] *Miranda* requires, "[f]irst, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." (*Moran v. Burbine* (1986) 475 U.S. 412,

421 [106 S.Ct. 1135, 1141, 89 L.Ed.2d 410].) The "totality of the circumstances" is to be considered in determining whether the waiver was voluntary, and the pertinent circumstances should include the suspect's particular background, experience, and conduct. And the "state must demonstrate the voluntariness of a confession by a preponderance of the evidence." [¶] There is nothing in the record that indicates the confession was involuntary. We have already established that [petitioner] was not forced to answer questions, that he never invoked one of his *Miranda* rights, nor that he was tricked into believing he would receive a benefit in exchange for confessing. De Souza read each right in Spanish, and asked if [petitioner] understood each of them. [Petitioner] clearly stated "sí" to each question. The record indicates that [petitioner] asked for clarification in other portions of the interrogation, thus evidencing his ability to assert his rights and demand explanation when he needed it. [¶] [Petitioner] has below average intelligence and lacks a formal education. However, as Apodaca testified, [petitioner] understood the charges against him, and had successfully eluded law enforcement for 20 years, traveling throughout the country, using several aliases yet maintaining employment and supporting a family. The sum of these circumstances demonstrates that [petitioner] was a high functioning individual, and thus capable of understanding the *Miranda* warning. [¶] We also reiterate the fact that when asked why he confessed, [petitioner] responded he *wanted* to "come clean." He did not say it was because he felt "forced" or "threatened." Thus, there was sufficient evidence for the trial court to find that [petitioner's] confession was knowingly and voluntarily given. [¶] A valid

*Miranda* waiver may be express or implied. (See *North Carolina v. Butler* (1979) 441 U.S. 369, 373 [99 S.Ct. 1755, 1757, 60 L.Ed.2d 286].) More specifically, there is an abundance of case law supporting the proposition that a waiver can be implied by a suspect's simply answering questions after an acknowledgement that he or she understands those *Miranda* rights. Accordingly, De Souza was not required to have [petitioner] sign a waiver form or expressly state that he waived his *Miranda* rights.

Lodgment no. 6 at 4–9 (some citations omitted).

As an initial matter, "[t]he requirements of *Miranda* ... are 'clearly established' federal law within the meaning of AEDPA." *Juan H. v. Allen,* 408 F.3d 1262, 1271 (9th Cir.2005), *cert. denied,* 546 U.S. 1137, 126 S.Ct. 1142, 1145, 163 L.Ed.2d 1000 (2006); *Jackson v. Giurbino,* 364 F.3d 1002, 1009 (9th Cir.2004). For the reasons set forth below, petitioner has not shown the California Supreme Court's decision to deny his *Miranda* claims "was contrary to, or involved an unreasonable application of, clearly established Federal law...." 28 U.S.C. § 2254(d).

**A. The police officers did not begin interrogating petitioner without first advising him of his *Miranda* rights:**

 On January 21, 2003, Detectives De Souza and Miller interviewed petitioner regarding Mejia's murder, and a transcript of this interview is part of the record. CT 309–13, 315–434. The interview included the following preliminary exchange between Detective De Souza [7] and petitioner:

---

**7.** Detective De Souza conducted the interview in Spanish, and it was later translated into English. CT 309–13, 315–434. The California Court of Appeal found "the parties *stipulated* to the transcript as being 'an accurate

DE SOUZA: ... is an investigator here ...

[PET'R]: Uh huh..

DE SOUZA: ... and I'll be interpreting for him.

[PET'R]: Okay.

DE SOUZA: A few little questions he's going to ask.

[PET'R]: Uh Huh.

DE SOUZA: Okay. Is that alright?

[PET'R]: It's alright.

DE SOUZA: It's very important for you to speak loudly so that we can understand one another. Do you understand?

[PET'R]: Uh huh. (Affirmative)

DE SOUZA: So that we can ... you know ... so I can explain it to him. So that I can translate for him correctly.

[PET'R]: Okay.

DE SOUZA: Do you understand? Now then ... a little bit of English or so, so?

[PET'R]: No. But I don't ... don't ... don't ... I do understand it, but don't speak it.

DE SOUZA: Okay. I understand but I don't speak it very good. Okay. Uhm ... uh ... do you know why you are here right now?

[PET'R]: (No audible response).

DE SOUZA: Do you know why you are here right now?

[PET'R]: Yes.

DE SOUZA: Okay. You know why you are here. Yes. Okay. **Before we ask you some questions, I'm going to**

depiction [ ] of the conversation" between the detectives and petitioner, Lodgment no. 6 at 5 (emphasis in original); *see also* RT 60–61, and petitioner does not challenge this finding. 28 U.S.C. § 2254(e)(1).

tell you the rights you have under the law.

[PET'R]: Uh huh.

DE SOUZA: **So that ... you can ... you can understand your rights under the law. Then we are going to ask you some questions so we know your side of the story.** Every story has two sides, right? Yes?

[PET'R]: Uh huh. (Affirmative)

DE SOUZA: Yes? Say yes and ... so we can understand you correctly. Okay. Is that alright? Yes?

[PET'R]: Yes.

CT 310–11, 316–17 (emphasis added).

 Despite claiming custodial interrogation began before he received *Miranda* warnings, petitioner offers no serious argument that his initial exchange with Detective De Souza constituted interrogation, and it clearly did not. "Not every question asked in a custodial setting ... constitutes 'interrogation.'" *United States v. Chen*, 439 F.3d 1037, 1040 (9th Cir.2006) (citation and footnote omitted). Rather, "interrogation" means "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006). "The test is an objective one; the subjective intent of the police is relevant, but not conclusive." *Washington*, 462 F.3d at 1132; *see also Innis*, 446 U.S. at 301–02, 100 S.Ct. at 1690 ("[T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (emphasis in original)).

Here, as the California Court of Appeal held, the exchange merely established the detectives would like to ask petitioner some questions, Detective De Souza would be acting as a Spanish interpreter, and petitioner would be informed of his rights under the law *before any questions were asked.* *See* CT 311, 317 ("Before we ask you some questions, I'm going to tell you the rights you have under the law."). Since the preliminary exchange between Detective De Souza and petitioner was to ensure petitioner understood *Miranda* warnings had significant legal meaning, *Juan H.*, 408 F.3d at 1272, but was not to elicit—and did not elicit—any incriminating statements from petitioner, the preliminary exchange did not constitute interrogation within the meaning of *Miranda. South Dakota v. Neville*, 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983); *Innis*, 446 U.S. at 301–02, 100 S.Ct. at 1689–90.

### B. Petitioner was properly advised of his *Miranda* rights:

 Following the preliminary exchange, Detective De Souza advised petitioner of his rights, as follows:

DE SOUZA: You have the right to remain silent. Do you understand? Yes or no?

[PET'R]: Yes.

DE SOUZA: Anything you say can be used against you in a court of law. Do you understand? Yes or no?

[PET'R]: Yes.

DE SOUZA: You have the right to consult an attorney before and during any interrogation. Do you understand? Yes or no?

[PET'R]: Yes.

DE SOUZA: Okay. If you can't afford an attorney, one will be appointed by the court before any interrogation if you wish. Do you understand? Yes or no?

[PET'R]: Yes.

DE SOUZA: Okay. Do you understand each of those rights I've just explained to you?

[PET'R]: Yes.

CT 312–13, 318–19. This advisement, which Detective De Souza read from the standard Orange Police Department Form M–11, RT 59–60, closely tracked the language of *Miranda*, *Juan H.*, 408 F.3d at 1272, and contained all the elements *Miranda* requires. *Miranda*, 384 U.S. at 444, 478–79, 86 S.Ct. at 1612, 1630; *Dickerson*, 530 U.S. at 435, 120 S.Ct. at 2331. Since petitioner does not otherwise explain his claim that the *Miranda* warnings were inadequate, this claim must fail.

**C. Petitioner's implied waiver was voluntarily, knowingly and intelligently made:**

 To determine whether a *Miranda* waiver is voluntary, knowing and intelligently made, the Court must examine the totality of the circumstances. *Burbine*, 475 U.S. at 421, 106 S.Ct. at 1141; *Spring*, 479 U.S. at 573, 107 S.Ct. at 857. Moreover, "an explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 375–76, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979); *United States v. Labrada–Bustamante*, 428 F.3d 1252, 1262 (9th Cir.2005). Rather, "a suspect may impliedly waive the rights by answering an officer's questions after receiving *Miranda* warnings." *Unit-

ed States v. Rodriguez–Preciado*, 399 F.3d 1118, 1127 (9th Cir.2005), *amended by*, 416 F.3d 939 (9th Cir.2005); *Terrovona v. Kincheloe*, 912 F.2d 1176, 1179–80 (9th Cir. 1990), *cert. denied*, 499 U.S. 979, 111 S.Ct. 1631, 113 L.Ed.2d 726 (1991). "[T]he question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Butler*, 441 U.S. at 374–75, 99 S.Ct. at 1758 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

 Here, the totality of the circumstances surrounding the interrogation show petitioner's waiver was voluntary, knowing and intelligent. As an initial matter, the detectives who interviewed petitioner wore plainclothes and did not display their weapons or threaten petitioner, RT 58–59, and petitioner was not handcuffed during the interview, which took place in an unlocked room. RT 64. Thus, despite being a "custodial interrogation," there were no elements of coercion or duress present.[8] Additionally, the detectives conducting the interview gave petitioner breaks, as well as water or soft drinks. CT 417–18. Further, as the California Court of Appeal noted, petitioner neither refused to talk to the detectives nor asked for an attorney despite being advised of his *Miranda* rights and indicating he understood them. CT 312–13, 318–19. Instead, petitioner proceeded to answer the detectives' questions about Mejia's shoot-

8. To the extent petitioner's claim challenges his confession as not being voluntary because the preliminary exchange between Detective De Souza and petitioner was an "unconscionable" "softening-up interrogation technique[ ]," Petition, Exh. A at 3–4, his claim is also without merit. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Con-

*nelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir.), *cert. denied*, 537 U.S. 981, 123 S.Ct. 449, 154 L.Ed.2d 343 (2002). Here, petitioner simply has not demonstrated any coercive police activity during his brief preliminary exchange with Detective De Souza or at any other point during the interview. *Connelly*, 479 U.S. at 167, 107 S.Ct. at 522.

ing and, during the interrogation, petitioner expressly told the detectives he wanted to confess because the shooting was a problem he "always ha[d] on [his] mind...." CT 419. Moreover, petitioner has not rebutted the California Court of Appeal's factual finding that he "was a high functioning individual, and thus capable of understanding the *Miranda* warning." [9] Lodgment no. 6 at 8. Thus, under the totality of the circumstances, petitioner clearly understood his *Miranda* rights, and his decision to waive his *Miranda* rights about the Mejia shooting may be inferred, *Butler,* 441 U.S. at 373, 99 S.Ct. at 1757; *Juan H.,* 408 F.3d at 1272; *Terrovona,* 912 F.2d at 1179–80; thus, petitioner's waiver was voluntary, knowing and intelligently made. *Spring,* 479 U.S. at 573, 107 S.Ct. at 857; *Burbine,* 475 U.S. at 421, 106 S.Ct. at 1141.

Accordingly, the California Supreme Court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law, within the meaning of 28 U.S.C. § 2254(d).

## VI

■ In Ground Two, petitioner claims he was denied a "full and fair *Miranda* hearing" in the trial court under California Evidence Code § 402(b).[10] More specifically, petitioner complains the trial court erred during the suppression hearing on petitioner's confession by sustaining relevancy objections to defense counsel's questions of Detective De Souza about: (1) whether he knew petitioner had invoked his *Miranda* rights in a previous interview by the "feds"; (2) whether he was following Orange Police Department procedures when he failed to ask petitioner to expressly waive his *Miranda* rights; and (3) whether he deliberately tried to circumvent *Miranda* to obtain a confession from petitioner.[11]

■ A federal court, in conducting habeas review, is limited to deciding whether a state court decision violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *McGuire,* 502 U.S. at 67, 112 S.Ct. at 480; *see also Dugger v. Adams,* 489

9. In federal habeas proceedings, a state court's subsidiary factual determinations regarding the voluntariness of a *Miranda* waiver are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1), *Miller v. Fenton,* 474 U.S. 104, 112, 117, 106 S.Ct. 445, 450, 453, 88 L.Ed.2d 405 (1985); *Collazo v. Estelle,* 940 F.2d 411, 415 (9th Cir.1991) (en banc) (same), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992); *Derrick v. Peterson,* 924 F.2d 813, 817 (9th Cir.1991), *cert. denied,* 502 U.S. 853, 112 S.Ct. 161, 116 L.Ed.2d 126 (1991).

10. Evidence Code § 402(b) provides:

The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests.

11. During the suppression hearing on petitioner's confession, the trial court sustained the prosecution's relevancy objections to questions asked of Detective De Souza about: (1) whether he knew that petitioner "had been interviewed by the feds and had invoked his *Miranda* rights"; (2) whether it was his "custom and policy not to ask [a defendant to waive his *Miranda* rights in writing]"; (3) why he "did [ ] not ask [for an express waiver]"; and (4) whether he was "following policy not to ask [for an express waiver.]" RT 66–67. After each objection was sustained, defense counsel did not offer any proof of the relevancy of the questions. *Id.*

U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."). Here, Ground Two [12] "merely challenge[s] the correctness of the trial court's actions and cannot reasonably be construed to allege a deprivation of federal rights. Accordingly, [it] cannot serve as a basis for obtaining habeas relief." *Givens v. Housewright,* 786 F.2d 1378, 1381 (9th Cir.1986); *Contreras v. Rice,* 5 F.Supp.2d 854, 869 (C.D.Cal.1998).

### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

---

12. Petitioner makes a passing reference to the Fifth and Fourteenth Amendments in his habeas corpus petition, Petition at 4, but does not relate this reference to Ground Two. In any event, even if Ground Two raised a cognizable federal due process claim, it would be without merit. *See Spivey v. Rocha,* 194 F.3d 971, 977–78 (9th Cir.1999) ("A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process."), *cert. denied,* 531 U.S. 995, 121 S.Ct. 488, 148 L.Ed.2d 461 (2000); *Gonzalez v. Knowles,* 515 F.3d 1006, 1011 (9th Cir.2008) (same). Here, the California Court of Appeal found any possible error in the trial court's evidentiary rulings was harmless under *People v. Watson,* 46 Cal.2d 818, 836, 299 P.2d 243 (1956), *cert. denied,* 355 U.S. 846, 78 S.Ct. 70, 2 L.Ed.2d 55 (1957), Lodgment no. 6 at 10, which "is the standard applied by the California state appellate courts in reviewing non-constitutional magnitude, trial type errors[,]" *Bains v. Cambra,* 204 F.3d 964, 971 n. 2 (9th Cir.) (citations omitted), *cert. denied,* 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000), and this finding is neither contrary to, nor an unreasonable application of clearly established law. *Mitchell v. Esparza,* 540 U.S. 12, 18, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) (per curiam); *see also Inthavong v. Lamarque,* 420 F.3d 1055, 1058–59 (9th Cir.2005) (Under AEDPA, "we must defer to [the California Court of Appeal's harmless error] holding unless it was in conflict with the reasoning or the holdings of [Supreme Court] precedent or if it applied harmless-error review in an objectively unreasonable manner." (citations and internal quotation marks omitted)), *cert. denied,* 547 U.S. 1059, 126 S.Ct. 1660, 164 L.Ed.2d 403 (2006).